```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    -v-<br><br>CARL HALL,<br><br>        Defendant. | 00-cr-103 (JSR)<br><br><u>OPINION & ORDER</u> |

JED S. RAKOFF, U.S.D.J.:

Before the Court is Carl Hall's fourth motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). <u>See</u> ECF No. 130. Hall is serving a forty-year sentence for his participation in a violent drug-trafficking gang called the "Young Guns." On each of the three previous occasions that Hall requested that this Court grant him compassionate release, <u>see</u> ECF Nos. 88, 95, 113, the Court denied his motion, <u>see</u> ECF Nos. 90, 96, 122. However, the third motion was a closer call, as Hall had been diagnosed with an advanced form of cancer that, the Court held, constituted an extraordinary and compelling reason for a sentence reduction. ECF No. 122 at 2. The Court nevertheless concluded that the factors enumerated in 18 U.S.C. § 3553(a) weighed against a sentence reduction. <u>Id.</u> at 3-6. Hall brings his instant motion because his medical condition has substantially worsened and only palliative treatment remains available to him before his likely death in eighteen months or less. This is the kind of situation Congress had in mind when it authorized compassionate release, and, accordingly, and for the reasons that follow, the Court grants Hall's motion and reduces

1

his sentence to time served, but conditioned on the development of a detailed plan for Hall's release satisfactory to the Probation Office.

I.  Background

Hall is presently fifty-three years old. On July 7, 2000, Hall pleaded guilty before this Court to a very serious charge of racketeering, based on five predicate acts (one murder, two attempted murders, conspiracy to commit murder, and conspiracy to distribute and possess with the intent to distribute crack, cocaine, and heroin). He also pleaded guilty to conspiracy to distribute a controlled substance. On March 8, 2002, the Court sentenced Hall to life imprisonment. Following an appeal, the Court resentenced Hall to a term of forty years' imprisonment and five years' supervised release. Hall is presently housed at the Federal Medical Center in Butner, North Carolina ("Butner FMC"), and is scheduled to be released in July 2037. ECF No. 133 at 1.

Hall was introduced to drugs early in his life. See ECF No. 114 at 2. Both of his parents, as well as his grandparents and great-grandmother, were drug dealers. Id. His father was incarcerated for narcotics offenses when Hall was three, and Hall's father eventually died in prison. Id. Hall's mother, who was killed when Hall was twenty-two, regularly left him unsupervised for days at a time when she went on "drug sprees." Id. at 2-3. Hall's stepfather, a Port Authority officer, was also affiliated with gangs and guided Hall toward drug dealing. Id. at 3. In his teens, Hall left his family and joined the "Young Guns." Id.

Hall suffers from multiple mental health conditions, for which he has sometimes received treatment while incarcerated. Id. at 4. These conditions have been exacerbated by the total of more than eight years that Hall has spent in solitary confinement. ECF No. 114 at 4; see also ECF No. 131 at 4. Notwithstanding these challenges, Hall earned his GED in 2002 and has since completed nearly 80 further educational courses. ECF No. 114 at 6. In May 2024, Hall wrote to this Court "to express [his] most heartfelt apology to the families of victims" and to his own family. ECF No. 115-26 at 2.

In July 2024, Hall was diagnosed with Stage IV metastatic squamous cell carcinoma. ECF No. 131 at 2. After several surgeries to remove Hall's tumors, medical staff at Butner FMC concluded in March 2025 that surgery was no longer a viable option for him. Id. Accordingly, Hall was advised to begin "systemic chemotherapy" of some four to six cycles every three weeks. Id. at 2-3. Hall's provider stated that Hall's prognosis was terminal, meaning that his cancer is incurable, and his life expectancy is eighteen months or less. Id. at 3. As noted infra, one study puts the life expectancy of patients with Hall's condition at less than four months. Id. at 9. Since March 2025, Hall has undergone at least four rounds of palliative chemotherapy and has experienced side effects including nausea, trouble swallowing, and diminished use of his arm. Id. at 3.

Hall filed the instant motion on June 10, 2025. ECF No. 130; see ECF No. 131 ("Mot."). The motion was fully briefed by June 27, 2025.

3

See ECF No. 133 ("Gov't Opp'n"), 134 ("Reply"). Oral argument was held on July 14, 2025.

II. Analysis

This Court is empowered to reduce a term of imprisonment only if (1) a defendant exhausts available administrative remedies; (2) "extraordinary and compelling circumstances warrant such a reduction"; (3) the factors set forth in 18 U.S.C. § 3553(a) also warrant a reduction; and (4) the reduction is consistent with applicable United States Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1).

A. Exhaustion of Administrative Remedies

There is no dispute that Hall has exhausted his administrative remedies. On March 20, 2025, Hall submitted a request for a sentence reduction to his case manager. ECF No. 131 at 6, Ex. 1 at 68. Then, on March 28, 2025, Acting Warden Lott at Butner FMC recommended a sentence reduction to the Bureau of Prisons ("BOP"). The BOP, however, has not yet acted on Hall's request for a sentence reduction. See id., Ex. 2 at 1. Under the statute, this is tantamount to exhaustion. 18 U.S.C. § 3582(c)(1)(A) (providing that administrative remedies may be exhausted upon "the lapse of 30 days from the receipt of [a request to reduce a sentence] by the warden of the defendant's facility").

B. Extraordinary and Compelling Circumstances

The parties do not dispute that, as the Court held on Hall's prior motion for a sentence reduction, Hall's terminal cancer

4

constitutes an "extraordinary and compelling" reason for a sentence reduction. See ECF No. 122 at 2, 4; Mot. at 7; Gov't Opp'n at 4.

C.  Section 3553(a) Factors

However, Hall and the Government disagree as to whether the applicable Section 3553(a) factors support a sentence reduction. The factors that are most relevant here are "the need for the sentence imposed" to (1) "reflect the seriousness of the offense"; (2) "afford adequate deterrence to criminal conduct"; and (3) "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C).

At a high level, Hall argues that his terminal diagnosis and the side effects he is experiencing from chemotherapy have rendered him unable to pose a danger to society and that, therefore, his "deteriorating health should now outweigh any concerns the Court previously had concerning the seriousness of Mr. Hall's offense conduct and any danger he may have posed when the Court ruled on his prior application." Mot. at 10. The Government contends that Hall's motion should be denied because of the seriousness of his underlying offense and the extent of his prison disciplinary record. Gov't Opp'n at 4-6. The Government contends that these circumstances counsel in favor of continued incarceration in order to protect the public and deter Hall from future misconduct. See id.

1.  Seriousness of Criminal Conduct and Respect for Law

As the Court emphasized in its decisions denying Hall's previous motions for compassionate release, "Hall's crimes were of the most serious nature and require substantial punishment." ECF No. 90 at 4;

5

see also ECF No. 122 at 3-4. However, the fact that the crimes Hall committed in connection with his membership in the "Young Guns" were extraordinarily serious does not necessarily preclude a sentence reduction. In United States v. Ramirez, for instance, a court in this District granted compassionate release to a defendant who, like Hall, was suffering from terminal cancer. No. 98 Cr. 438, 2021 WL 4150891, at *9 (S.D.N.Y. Sept. 13, 2021). Despite the defendant's having been "the leader of a violent narcotics trafficking organization," the court reasoned that the twenty-three years he had already served represented a "substantial punishment" and that "further imprisonment [was] not necessary to serve the goals of deterrence and promoting respect for the law." Id. at *8. Here, Hall has served some twenty-five years of his forty-year sentence. As in Ramirez, this is substantial punishment under almost any analysis.

    2.    Deterrence

Hall argues that his terminal diagnosis and deteriorating medical condition decrease the risk that he will recidivate during the remaining months of his life. Mot. at 10-11. The Government responds that Hall's extensive disciplinary record and prior convictions indicate that incarceration has, until this point, not adequately deterred Hall from engaging in criminal conduct. Gov't Opp'n at 4-6. Although it is a close call, the Court concludes that this factor weighs in Hall's favor in a manner that it did not when the Court decided Hall's previous motion for a sentence reduction.

6

First, it is undeniable that Hall long posed a danger to others, including fellow prisoners. Hall was considered a "Career Offender" at the time the Court initially sentenced him; this designation was based on Hall's offense of conviction and his prior convictions (which included assault with intent to cause serious injury with a weapon, attempted criminal possession of a controlled substance, criminal possession of a controlled substance, and criminal possession of a weapon). Id. at 4.[1] During his more than two decades in federal prison, Hall has been found responsible for more than 100 disciplinary infractions, including possessing razor blades, fighting with other inmates, and throwing feces and bodily fluids at staff. Id. at 5; see also id., Ex. A. But the majority of Hall's infractions, and in particular the bulk of the violent ones, took place between 2013 and 2017. See id., Ex. A. Over the past two years, Hall has only had two infractions, neither of them violent. His most recent infraction, in April 2025, involved his possession of a plastic bag containing "homemade liquid intoxicants also known to be house liquor," which Hall claims actually consisted of fruits that he had set aside (and that had fermented in the bag) because he cannot always eat on account of his chemotherapy treatment. See Gov't Opp'n at 5 n.1; id., Ex. B at 1.[2]

---

[1] Hall notes that the Court considered his prior convictions at the time of his 2005 resentencing and concluded that "an 'alternative' to life imprisonment was 'warranted.'" Reply at 1 (quoting ECF No. 115-21 at 14:16-18).

[2] The Government discusses this incident by describing it as a May 23, 2025 sanction. Gov't Opp'n at 4. The sanction imposed on Hall on that

Second, while Hall's disciplinary record is a factor that weighs against his release, his prognosis has changed since he last moved for a sentence reduction. His cancer is now metastatic and terminal. Mot. at 3. Indeed, Hall's medical provider's suggestion of an eighteen-month life expectancy may be an overestimation because the median length of survival for the type of incurable head and neck cancer from which Hall suffers is many months fewer. Id. at 9 (citing Arta Hosseini et al., Prognostic Model for Overall Survival of Head and Neck Cancer Patients in the Palliative Phase, 23 BMC Palliative Care 54 (2024)). Hall argues that given his short life expectancy, he will, in effect, serve a life sentence -- the very sentence the Court specifically chose not to impose when it resentenced Hall -- if he is not granted compassionate release. See Reply at 1.

Hall's prognosis and palliative chemotherapy reduce the likelihood that he will re-offend. As Hall argues, courts have found that terminal diagnoses reduce the risk of recidivism. Mot. at 10-11. For example, one court reasoned that, given a defendant's terminal colon cancer, "the chance of recidivism at this point in his life is unlikely" and the risk of the defendant "posing a significant danger to the community is greatly reduced because of his medical condition" and his knowledge that re-offending would likely result in the revocation of his supervised release and, thus, his dying in prison.

---

date was in reference to the April 25, 2025 incident involving the fermented bag of fruit. See Ex. A at 1. There is no indication that Hall committed any further infractions in May 2025.

8

United States v. Perez-Alvarado, Nos. 16 Cr. 940, 16 Cr. 2270, 17 Cr. 7017, 2020 WL 5203386, at *3 (S.D. Cal. Aug. 31, 2020). Likewise, Hall will likely spend the short time remaining to him coping with the side effects of his chemotherapy, which include nausea, trouble swallowing, pain, and diminished use of his arm. See Mot. at 3. As Hall's counsel represented at oral argument, a psychological evaluation conducted in connection with Hall's previous motion for compassionate release concluded that he posed a low risk of reoffending. The Court agrees that the risk of Hall re-offending and posing a threat to society, although it has not been eliminated, has been greatly reduced on account of his short life-expectancy and treatment regimen.[3]

Third, the Government points to certain interactions that Hall has recently had with medical staff at Butner FMC. See Gov't Opp'n at 5. But those interactions do not prove that Hall would pose a danger to others if released. For instance, on June 15, 2025, Hall resisted taking his medication and argued with his nurse, but he eventually took the medication. Id., Ex. C at 1. On June 5, 2025, after Hall requested and received a hospital bed, the nurse suggested that Hall sleep with a bed wedge to elevate his head. Hall refused, telling the nurse, "I will just sleep on the floor, and then it's going to create

---

[3] Resisting this conclusion, the Government argues that, because Hall is able to maintain his Activities of Daily Living, he is still "capable of posing a risk of danger to the community." Gov't Opp'n at 6. However, "[n]either the statute nor the Guidelines require demonstration that a terminal illness causes functional impairment." United States v. Winckler, No. 13 Cr. 318, 2020 WL 1666652 at *3 (W.D. Pa. Apr. 3, 2020).

more work for all of y'all." Id. at 9. While these instances indicate that Hall (like many cancer patients) has resisted or been frustrated by treatment, they do not involve violence. Moreover, these incidents occurred while Hall has been "under the care of the same BOP medical staff that routinely ignored his pronounced symptoms and delayed his diagnosis and treatment." Reply at 2. Hall's counsel represented at oral argument that Hall has not engaged in similar behavior with outpatient medical staff.

D.   Sentencing Commission Policy Statements

Finally, granting Hall's motion for a sentence reduction is consistent with guidance from the Sentencing Commission. The Sentencing Guidelines expressly characterize "terminal illness" as an "extraordinary and compelling reason[ ]" for compassionate release. U.S.S.G. § 1B1.13 (Nov. 2024).

III. Conclusion

For the foregoing reasons, the Court is inclined to grant Hall's motion for a sentence reduction. But his release cannot properly occur until appropriate conditions for his release have been arranged, for otherwise Hall might present a danger both to others and to himself.

At the hearing held on July 14, 2025, Hall's counsel, joined by his cousin, LaQuandra Martin, presented the outlines of two possible release plans, and later presented a third.[4] At the Court's request,

---

[4] The Government contends that Hall lied in connection with a release plan he previously proposed, under with which he would have lived with Ms. Martin; that plan referred to her as Hall's "sister." See Gov't Opp'n at 6 n.3. Hall acknowledges that Ms. Martin is biologically his

10

these plans were investigated by the able Probation Officer, Hillel Greene, who reported his results to the Court. Based on this investigation, only one of these plans is satisfactory to the Court. Under this plan, Hall's family would rent a one-bedroom, ground-floor apartment for him in Hackensack, New Jersey, near the Hackensack University Medical Center. Hall's family would arrange for a home health aide to stay with him during the overnight hours, and family members and friends would attend to his needs during the day. Hall's family would also collaborate with his social worker to ensure that he could access the benefits to which he would be entitled, and in the interim, Hall's family and one of his friends would meet the costs of his housing and care for up to a year.

Accordingly, the Court hereby grants Hall's release conditioned on, and only to take effect when, Probation Officer Greene certifies to the Court and to the BOP that he is satisfied that the release plan described above is finally ready to take effect.

SO ORDERED.

New York, NY
July 24, 2025

JED S. RAKOFF, U.S.D.J.

---

cousin. See Reply at 3 n.2. As Ms. Martin confirmed at the hearing and wrote to the Court in connection with one of Hall's previous motions, she and Hall "grew up alongside each other and refer to each other as brother and sister." Id.; see ECF No. 115-14 ("Carl and I were more like siblings than cousins, growing up together in the harsh realities of the 1980s in drug-ridden Harlem and Spring Valley, New York. Our mothers . . . were inseparable despite not being blood-related.").